OPINION
{¶ 1} Defendant-appellant, Charles Raymond Morjock, appeals a decision of the Mahoning County Court of Common Pleas Division of Domestic Relations modifying parental rights and responsibilities between plaintiff-appellee, Nancy Lynn Morjock, and appellant, Charles Raymond Morjock, and imputing income to appellant under R.C. 3119.01(5)(B) to calculate child support payments.
 {¶ 2} Appellee filed for divorce from appellant on July 31, 1997. The trial court granted the divorce and awarded split parenting of appellee's and appellant's three minor children. The trial court granted custody of Katie Morjock and Clint Morjock to appellee and custody of Charles Morjock II to appellant. The trial court also determined the child support obligations of both parties at this time.
 {¶ 3} On December 17, 1999 the child support obligations were modified based on a change in appellant's income.
 {¶ 4} On April 5, 2000, appellant filed a motion for modification of parental rights and responsibilities and to enter into a shared parenting plan. The trial court heard the motion on July 17, 2000, and entered judgment on September 12, 2000, naming appellant as the sole residential parent of Katie Morjock. The trial court scheduled a hearing to determine child support payments on December 15, 2000.
 {¶ 5} On October 31, 2000, appellee filed a motion to recalculate child support due to "a significant change in circumstances."
 {¶ 6} At the December 15, 2000 hearing, the trial court did not rule on the motion to recalculate child support. Instead, the trial court established a holiday visitation schedule and temporary visitation schedule, with a further hearing scheduled for January 24, 2001. At this time, the trial court specifically stated in its order that "all other motions remain pending."
 {¶ 7} On January 24, 2001, the trial court held the status conference and adopted an agreed judgment entry of a temporary order for shared parenting of Katie Morjock.
 {¶ 8} On April 8, 2002, appellee filed a motion for modification of parental rights and responsibilities for Charles Morjock II.
 {¶ 9} On May 6, 2002, the trial court permanently adopted the temporary order for shared parenting of Katie Morjock.
 {¶ 10} On May 17, 2002, the trial court adopted an agreed judgment entry modifying the parental rights and responsibilities for Charles Morjock II. The judgment transferred designation of custody and residential parent from appellant to appellee. The trial court also scheduled:
 {¶ 11} "A hearing relative to the child support obligation, health insurance and all matters relative to the parental rights of the parties minor children shall be heard on the 22 day of August, 2002 at 9:00 a.m."
 {¶ 12} The trial court then rescheduled this hearing to September 26, 2002.
 {¶ 13} At the September 26, 2002 hearing, the parties presented testimony to impute appellant's income level to recalculate child support obligations relative to all three children and dating back to October 2000. Appellant formally objected to the scope of this hearing, claiming that the trial court's order of May 17, 2002 scheduled a hearing only to determine the child support obligation for Charles Morjock II. The trial court overruled this objection, stating "there's ample notice, plenty of due process." The trial court also allowed the parties to file a written closing statement, which appellant did not file.
 {¶ 14} On February 11, 2003, the trial court issued its decision from the hearing. This decision modified the parental rights and responsibilities and imputed income to calculate child support. The trial court based its recalculation of child support on the change of residential status of Charles Morjock II. The trial court established appellant's gross income at $52,000 per year commencing in the year 2000. Appellant's prior gross income was $13,160. The trial court reasoned that the totality of the evidence, including appellant's earnings history, testimony of the appellee, and exhibits admitted at trial supported this determination. The trial court established appellee's gross income at $6,706 per year commencing in the year 2000. The trial court modified appellant's child support payment to $1,117.83 per month, effective April 5, 2002.
 {¶ 15} On July 18, 2003, the trial court entered judgment from this decision. This appeal followed.
 {¶ 16} Appellant's first assignment of error states:
 {¶ 17} "The trial court denied defendant-appellant due process."
 {¶ 18} The allegation of denial of due process implicates Section 16, Article I, Ohio Constitution and the Fourteenth Amendment to the United States Constitution. The standard of review for legal rulings where constitutional issues are involved is de novo. State v. Taylor (1999),135 Ohio App.3d 182, 184-185, 733 N.E.2d 310.
 {¶ 19} Procedural due process requires reasonable notice and an opportunity to be heard before deprivation of a recognized property interest. Ohio Assn. of Pub. School Emp., AFSCME, AFL-CIO v. LakewoodCity School Dist. Bd. Of Edn. (1994), 68 Ohio St.3d 175, 177,624 N.E.2d 1043. Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that the defendant has reasonable opportunity to prepare for the specific issues presented. In re Gault (1967), 387 U.S. 1, 33-34, 87 S.Ct. 1428,18 L.Ed.2d 527.
 {¶ 20} Appellant claims the trial court erred by overruling his objection of the lack of due process regarding the scope of the September 26, 2002 hearing. Appellant argues that the hearing scheduled on May 17, 2002, applied only to the changes in child support resulting from the change of custody of Charles Morjock II. Appellant argues that the trial court should not have considered the motion to recalculate child support filed by the appellee on October 31, 2000. Without knowledge of the scope of the hearing, appellant argues he could not adequately prepare for the hearing, violating his due process.
 {¶ 21} However, there are several facts which undermine appellant's argument. First, appellant received notice of the original motion filed by appellee on October 31, 2000, requesting a recalculation of child support because of changed circumstances. The trial court scheduled that hearing for December 15, 2000. Even though the trial court did not rule on that motion during the December 15, 2000 judgment, it did state that "all motions remain pending." At this time, appellant knew that any reconsideration of child support in the future could include the motion to recalculate.
 {¶ 22} Second, the trial court scheduled the September 26, 2002 hearing as one "relative to the child support obligation, health insurance, and all other matters relative to the parental rights of the parties minor children * * *." Appellant's contention that this statement only referred to matters relating to Charles Morjock II is contrary to the common sense meaning of the words. A reasonable person would interpret this statement as referring to a recalculation of child support based on all changed circumstances.
 {¶ 23} Finally, appellant objected to the scope of the hearing before the hearing began. At that time, appellant knew the scope of the hearing would include all previous motions, but merely disagreed with the wording of the trial court's order and asserted what appellant believed to be the proper scope. This difference of opinion is not consistent with a lack of due process. To have a lack of due process, appellant must not have any knowledge of the scope of the hearing and because of this, appellant is prejudiced in its defense. Here, appellant was provided knowledge of the scope of the hearing. Because appellant had adequate opportunity to prepare for the hearing, due process is satisfied.
 {¶ 24} Therefore, appellant's first assignment of error is without merit.
 {¶ 25} Appellant's second assignment of error states:
 {¶ 26} "The trial court erred in imputing income to the parties without sufficient evidence."
 {¶ 27} A question regarding the amount of potential income to be imputed to a child support obligor who is voluntarily unemployed or voluntarily underemployed, for purposes of calculation of child support, is a question of fact for the trial court and absent an abuse of discretion, that factual determination will not be disturbed on appeal.Rock v. Cabral (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218.
 {¶ 28} To determine the proper amount of child support, the court must use a child support schedule and worksheet defined in R.C. 3199.022 and 3199.023. This worksheet requires the parents to list their incomes as defined in 3199.01(C)(5). In this case, the record contains the required child support computation worksheet.
 {¶ 29} Income for a parent who is employed to full capacity is the gross income of the parent. R.C. 3199.01(C)(5)(a). Income for a parent who is unemployed or underemployed is the sum of the gross income of the parent and any potential income of the parent. R.C. 3199.01(C)(5)(b).
 {¶ 30} Potential income includes imputed income that the court determines the parent would have earned if fully employed. R.C. 3199.01(C)(11)(a). If the court determines the party is voluntarily underemployed, it must evaluate the criteria in R.C. 3199.01(C)(11)(a)(i-x) to impute income. These factors include the parent's prior employment experience, the parent's education, the availability of employment in the parent's geographic area, the prevailing wage and salary in the parent's geographic area, and the parent's skill and training. R.C. 3199.01(C)(11)(a)(i-x). A parent is voluntarily unemployed if he or she is intentionally unemployed. Rock v. Cabral (1993), 67 Ohio St.3d 108, 112,616 N.E.2d 218.
 {¶ 31} Appellant argues that the court erred because the level of income imputed to appellant under 3119.05(B)(5), $52,000, is arbitrary and not based on the evidence presented during the September 26, 2002 hearing. Appellant further argues that the evidence supports only the finding of $4,815.06 for the first nine months of the year as the current income level.
 {¶ 32} In its decision, the trial court conceded that appellant earned $4,815.06 during the first nine months of 2002, but further stated that the evidence supports the finding that appellant is capable of earning $52,000 per year. On this basis the trial court imputed appellant's income under R.C. 3119.01(C)(11)(a) at $52,000.
 {¶ 33} To support this calculation the trial court heard evidence that appellant: worked in construction since 1992, made a prevailing wage rate of $20-$24 per hour depending on the project, and earned $1,000 per week in 1999 and at least part of 2000 for the William Pizzuto Company with whom appellant is still employed. Thus, the trial court considered the following factors when imputing income under R.C. 3199.01(C)(11)(a): (i) the parents prior employment experience, (v) the prevailing wage and salary levels in the geographic area, (vi) the parent's special skills, (vii) evidence that the parent has the ability to earn the imputed income, and (ix) the parent's increased earning capacity because of experience. It should also be noted that appellant offered no evidence to refute appellee's claims of appellant's prior work and wage history. In addition, appellant had an opportunity to submit further evidence of prior work history and wage earning potential in a written closing statement. However, appellant voluntarily chose not to submit this written closing statement, foreclosing any opportunity to present contradictory evidence. Therefore, based on the evidence presented to the trial court at the September 26, 2002 hearing, the $52,000 imputed to appellant was not an abuse of discretion.
 {¶ 34} The trial court, based on the foregoing, properly found in its decision:
 {¶ 35} "The court finds that the defendant's annual gross income is at least fifty-two thousand dollars per year commencing in the year 2000. This is predicated upon his earnings history, the testimony of the plaintiff and the exhibits admitted at trial. In fact, the defendant did not deny this was his previous earning history. He maintains his income has been significantly reduced. * * * [I]t is hard to accept the defendant's contention the [sic] he supported himself on a net income of four thousand eight hundred dollars for a period of nine months. (Defendant's Exhibit 1). * * * [T]he totality of the evidence would still support the conclusion that the defendant is capable of earning an annual gross income of at least fifty-two thousand dollars. The defendant continues to do side jobs like landscaping and farming work. His testimony concerning the income generated by these activities is, to say the least, sketchy. The defendant's imputed annual gross income ORC 3119.01
(5), (b), is fifty-two thousand dollars per year commencing in the year 2000."
 {¶ 36} Based on all of the above, appellant's second assignment of error is without merit.
 {¶ 37} The decision of the trial court is hereby affirmed
Vukovich, J., concurs.
Waite, P.J., concurs.